## CONSTITUTIONALITY AND SCOPE OF THE OHIO RAILROAD COMMISSION ACT.

Common Pleas Court of Franklin County.

THE BLACK DIAMOND COAL & COKE COMPANY v. RAILROAD COMMISSION OF OHIO AND THE MARIETTA, COLUMBUS & CLEVELAND RAILWAY COMPANY.

Decided, July 1, 1909.

*Railroad Commission—Constitutionality of the Act Creating—Authority of the Commission Limited—Jurisdiction of the Courts—Distribution of Cars to Coal Mines—Arbitrary Rules Promulgated by the Commission· Inadmissible—Where the Effect is to Determine Future Judicial Questions as to Discrimination—What the Commission May Do—Section 20 et seq.*

1. The Ohio railroad commission act is saved from· invalidity ʽby the provision that its jurisdiction shall not be exclusive, but a matter first presented·to the commission may be subsequently heard and determined *de novo* in the courts.

2. It is· not just or equitable to include railroad fuel cars with the regular equipment of a company in the distribution of cars to coal mines along its line.

3. Nor is it within the province or power of the commission to promulgate an arbitrary rule as to the distribution of cars in the future, and thereby determine a future judicial question as to discrimination in the distribution of such cars without regard to circumstances and conditions as they may then exist; but the most that the commission can do is to observe the provision of Section 244-20 (Sec. 10), that when a railroad has an insufficient number of cars to meet all requirements, "such cars as are available shall be distributed among the several applicants therefor in proportion to their respective immediate requirements without discrimination between shippers or competitive or non-competitive places."

*T. P. Linn,* for plaintiff.

*U. G. Denman,* Attorney-General, and *O. E. Harrison,* for the Railroad Commission.

*Wilson & West,* for the railway company.

KINKEAD, J.

The plaintiff brings this action against the railroad commission because of its finding and order made against the plaintiff, as

shown by the petition. The railroad company is joined as a de-fendant, the relief asked against it being that it be restrained from enforcing the order made by the commission.

Plaintiff claims that the order made by the railroad commission is unreasonable, and therefore null and void.

The Attorney-General contends that this court can not hear this matter *de novo*; that the only evidence that ought to be sub-mitted is that tending to show a rating made by the commission is unreasonable. If that be true, the Legislature has undertaken to invest the railroad commission with some of the inherent juris-diction of the common law courts.

. The question before the railroad commission, which it decided, was a charge of unlawful discrimination against the railroad company in favor of one shipper and against another. The com-plaint made to the commission was by the shipper injured by the alleged discrimination. The burden of the claim was that the railroad company furnished to the Black Diamond Coal & Coke Company a greater percentage of its coal car equipment than it was entitled to, considering its output of coal in comparison with that of the other mining companies along its line.

This question was heard upon evidence by the railroad com-mission under the provisions of the act establishing this body. The Commission held in substance that the railroad company was guilty of unlawful discrimination in favor of the plaintiff, and it made an order requiring the railroad company to cease and desist from discriminating against the complainant, the Carbon Coal Mining Company, and made an order rating the mines ac-cording to their alleged respective capacities or output, directing and requiring the railroad company to follow and observe the same in the future.

The making of the order of rating for future conduct of the railroad company is the exercise of the same character of power as that of finding and determining that the company has been guilty of practicing discrimination in the past.

The power to hear and determine such questions of duty of common carriers has always been considered to be within the ex-clusive jurisdiction of courts. If the railroad commission act had provided that the commission had final and exclusive power to

act in such matters'; or if it provided in substance or effect that the matter could not be heard *de novo,* after action by the commission, the law would be invalid because it would be conferring exclusive judicial power upon an administrative body.

The validity of the law is saved because it provides that any parties in interest may commence an action in this court against the commission. It comes nearly passing the constitutional border. line when it provides that this court shall send the case back to the commission, if the evidence taken in the hearing here is new or different from that had before the commission. The commission is then given another opportunity to pass its judgment. And, if the parties are satisfied with the last finding by the commission, this court is not called upon to exercise its judgment. If the parteis are dissatisfied, the case comes back to the court for action.

That was what was done in this case, the submission now being upon all the evidence taken before the commission originally, and that taken before the court upon the first hearing.

The question as to the discriminatory conduct of the railroad company in October and November, 1907, so far as this court is concerned, is a moot question.

The court is of the opinion that the company was not guilty of intentional discrimination, but that it was in good faith acting upon a supposed right in furnishing the plaintiff fuel cars brought upon the railroad line from other lines for the special purpose of shipping railroad coal, or coal to be shipped for use of different railroads.

It appears that the Black Diamond mine was the only one along the line of the road which was engaging in that character of business. It appears from the evidence that this company made a special business of furnishing various roads with fuel, and these cars were sent by other roads to the Black Diamond mine for that purpose. This is the reason for the offer of the use of fuel cars made by Mr. Gilbert to the other mines, which it seems was not accepted.

The Black Diamond Company was given the percentage of the regular equipment of the railroad in addition or independent of the fuel cars.

To bunch all classes of equipment, inclusive of the fuel cars, and to strike a percentage based upon an arbitrary basis of what a mine might or might not do, according to the available number of working places, does not seem to be a just or equitable rule. What one mine operator may need, and what will be just to him, will depend upon what business he can do, as well as the character of his business, and his ability to do what business he is able to procure. A mine operator may have a goodly number of "working places," but he may not have the ability, industry, push or capital, to get the quantity of business which another who has a mine of equal or less capacity may procure. The business which one is able to get and do, as shown by his averaged orders, is the safer test.

As to the character of the equipment, I am clearly of the opinion, under the circumstances and conditions in this case as shown by the evidence, that in arriving at the percentages of cars between the several mines, it is not just nor equitable to include the railroad fuel cars with the regular equipment in the distribution of its cars. The Attorney-General admits, and the testimony shows, that the complainant, the Carbon Coal Company, does not desire any railway fuel cars, because it caters to the domestic trade. Notwithstanding the Diamond mine can procure enough general business to demand its just proportion of the regular equipment, and then engage in the special line of railroad fuel in addition, the Carbon Coal Co.'s argument is, though we do not want to engage in the railroad fuel business, still we insist that these railroad fuel cars shall be counted against the Diamond mine, and it shall not be allowed to have its equitable share of the regular equipment even though its business and capacity in the general commercial coal business justifies it. Such an arbitrary rule, without regard to the facts, such as appears in this case, does not seem to be calculated to do justice.

It does not seem to be within the province of power of the commission to make a rule of conduct, arbitrarily setting a standard of duty in the future which shall determine a future judicial question whether the railroad company will or will not be guilty of discriminating acts,

The propriety of intrusting as much judicial power to the commission as the act does, even temporarily, that is, until the aggrieved parties may pursue a roundabout course to obtain a judicial determination, is even questionable. But it would not seem to be within the legislative power, or the intent of the act to authorize the commission to determine a question of duty in advance, arbitrarily and without regard to what might be the circumstances or conditions.

The Attorney-General has quoted from Judge Dillon's opinion in *Johnson Coal Mining Co.* v. *Hocking Valley Railway Company*, in which he says:

"A court of equity will not assume to dictate the policy or business management of a common carrier aside from its clear duty under its charter or the statutes. That function belongs exclusively to the company itself, and will not be interfered with because changes ought to be made as apparently reasonable, necessary or otherwise."

The judge further says that a court of equity will interfere with the policy only when it is calculated or in effect discriminates in favor and against parties.

If a court will not dictate the business management of a common carrier, it would seem that a railroad commission should not substitute its judgment as to any particular rule or policy, as to what would or would not be discrimination, that being purely a judicial question.

The only warrant for the commission making a rating of the mines seems to be found in Sections 248-38, 244-22, 12, 244-24, to the effect that if a practice or service is found to be discriminatory, the commission may fix a reasonable regulation, practice or service to be observed and followed in the future.

Until all existing opinions as to the constitutional and judicial power are modified, the conclusion must be that no such power can be conferred upon, nor exercised by the commission. And were it not for the saving clause in Section 224-26, providing for what the aggrieved parties have independently of that section, the railroad commission act, as to these matters at least, would be invalid.

590.     FRANKLIN COUNTY COMMON PLEAS.

Coal Company v. Railroad Commission e: al. [Vol. VIII, N. S.

The railroad commission has no right by such a rule as it makes in this case, to determine the rights of these mine owners. As to them, the railroad commission act is as a blank. They may resort to the inherent equity powers and have their rights determined and protected.

The least and the most that the commission may do is to observe the provisions of Section 244-20, Section 10, which provides that when a railroad has an insufficient number of cars to meet all requirements, *"such cars as are available shall be distributed among the several applicants therefor in proportion to their respective immediate requirements without discrimination* between shoppers or competitive or non-competitive places."

An arbitrary rule made in advance, to govern in the distant future, having no regard for changed conditions, can not be designed to provide for "immediate requirements." And immediate requirements means the needs and requirements of each and all, the character and extent of their business, as disclosed by the books of the mine operators, and their ability to get out their orders.

If one has a line of trade in railroad fuel coal, in addition to his general commercial trade, and another is not engaged in furnishing railroad fuel, it follows that the immediate requirements of the former are that he must have railroad fuel cars, in addition to his proportionate share of the other cars as determined by his business and his ability to fill his orders.

The conclusion is that the order made by the railroad commission is not founded upon a correct and just basis; that such a rating founded arbitrarily and for all time, upon the supposed capacity of a mine, as appears from the number of working places, number of men employed, etc., whether made by a state railroad commission or by a railroad company, is unreasonable, unjust, and is not designed to provide for the "immediate requirements" of the respective shippers, but is calculated to foster, rather than to prevent discrimination, under some conditions and circumstances.

Furthermore, the railroad commission has no power, no more than has a court of equity, to make such an order and thus decide the question in advance.

Perpetual injunction granted as prayed for in petition.